UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.   22 CR 115 |
| | ) | Hon.   John Robert Blakey |
| MICHAEL J. MADIGAN and | ) | |
| MICHAEL F. McCLAIN | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT McCLAIN'S
MOTION FOR SEVERANCE**

The UNITED STATES OF AMERICA, by MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby responds to defendant Michael McClain's motion for severance (the "Motion"). R. 139. In support of this response, the government represents as follows:

## BACKGROUND

The facts of this case are set out at length in the government's prior filings and are incorporated herein by reference. R. 142. As detailed in the superseding indictment and prior filings, defendants Madigan and McClain are charged with engaging together in a slew of serious and wide-ranging criminal activity. Count One of the superseding indictment charges both defendants with a racketeering conspiracy spanning eight years, and Counts Two through Five allege both defendants participated in a years-long conspiracy to commit federal program bribery and to circumvent the system of accounting controls and falsify books and records related to ComEd and Exelon, as well as substantive counts based on this conduct. Furthermore, Counts Nineteen through Twenty-Two charge defendants together with engaging in a scheme to commit wire fraud

and honest services fraud, bribery, and use of a facility in interstate commerce to promote unlawful activity with respect to the Chinatown parcel. And Count Twenty-Three charges defendants together with engaging in a conspiracy to commit bribery with respect to the hiring of Individual FR-1 at AT&T.

## ARGUMENT

### The Motion to Sever Should Be Denied.

#### A.    Applicable Law

Rule 8(b) of the Federal Rules of Criminal Procedure provides the government with wide latitude in joining defendants and offenses, provided that, as here, the government can establish that defendants participated in the same act or transaction, or in the same series of acts or transactions, constituting the offense or offenses. *See generally United States v. Alvarez*, 860 F.2d 801, 822-25 (7th Cir. 1988); *United States v. Briscoe*, 896 F.2d 1476, 1515 (7th Cir. 1990). The requirements of Rule 8(b) are satisfied simply by establishing the existence of a criminal enterprise and by showing that each defendant participated in the same enterprise through the commission of the charged predicate offenses. *Id.*; *see also United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002) ("The fact that each of the defendants were part of a common conspiracy is also enough to justify joinder under Rule 8(b)."); *United States. v. Irizarry*, 341 F.3d 273, 289 (3rd Cir. 2003) ("Rule 8(b) provides substantial leeway to prosecutors who would join racketeering defendants in a single trial.").

The Supreme Court has cautioned that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of

justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)). *See also United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) ("There is a particularly strong preference for a single trial with codefendants who have been jointly indicted.") (citing *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002)).

A motion for severance is committed to the sound discretion of the trial court. In exercising this discretion, the trial court must give due deference to the strong public interest in favor of a joint trial:

> There is a strong interest in joint trials of those who engaged in a criminal enterprise. Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime. A joint trial gives the jury the best perspective on all the evidence and therefore increases the likelihood of a correct outcome.

*United States v. Buljiubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987). *See also United States v. Phillips*, 239 F.3d 829, 838 (7th Cir. 2001); *United States v. Schweihs*, 971 F.2d 1302, 1320-21 (7th Cir. 1992).

These important considerations outweigh the risk of prejudice from a joint trial in all but the "most unusual of circumstances." *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009). Moreover, in keeping with these public policy and due process/equity objectives, severance has been deemed particularly inappropriate in conspiracy cases. "The gravamen of conspiracy is that each conspirator is fully liable for the acts of all coconspirators in furtherance of the conspiracy. Thus, joinder is highly favored in

conspiracy cases, over and above the general disposition towards joinder for reasons of efficiency and judicial economy." *United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir. 1986) (citing *United States v. Papia*, 560 F.2d 827, 836 (7th Cir. 1977)). *Accord United States v. Brooks*, No. 17-CR-00173-5, 2021 WL 2413160, at *2 (N.D. Ill. June 14, 2021) (Blakey, J.) (preference for joint trial is "especially strong" where co-conspirators are indicted together) (collecting cases). *See also Alviar*, 573 F.3d at 539 ("There is a strong preference that co-conspirators be jointly tried, particularly when they were indicted together."); *United States v. Myers*, 892 F.2d 642, 647 (7th Cir. 1990) ("[S]everances are rarely granted in conspiracy cases.").

Based on these considerations, when a defendant has been properly joined under Rule 8(b), a district court should grant a Rule 14 severance for prejudicial joinder only if defendant is able to demonstrate that there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or would prevent the jury from making a reliable judgment concerning guilt or innocence. *Zafiro*, 506 U.S. at 539. In assessing such risks, a court should consider whether the government would be allowed to introduce evidence at a joint trial that would not be admissible if a defendant were tried alone (say, for example, the confession of a co-defendant); whether the defendants have markedly different degrees of culpability, or whether there is evidence that is only technically admissible against a joined defendant. *Id.* But even in these circumstances, the Supreme Court has explained that careful limiting instructions "often will suffice to

cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.[1]  Indeed, even more recently, the Supreme Court reemphasized that limiting instructions are sufficient in cases that involve potentially "life-and-death stakes for defendants," because jurors can understand and follow such limiting instructions.  *Samia v. United States*, 599 U.S. 635, 646-47 (2023).  In *Samia*, the evidence that was properly subject to a limiting instruction was a co-defendant's confession in a murder case, *id.* at 641-42, perhaps some of the most damaging evidence that can be introduced at trial.

### B.  Analysis

Severance is particularly inappropriate in this case.  To begin with, the lead charge is racketeering conspiracy.  R. 37, Count 1.  The defendants are alleged to have conspired to participate in an association-in-fact enterprise through a pattern of bribery and extortion.  As discussed above, the nature of this charge—specifically, the fact that it alleges that both defendants participated together in a racketeering enterprise—makes this case a poor candidate for severance.  Moreover, the defendants are alleged to be co-conspirators in that joint enterprise, and severance is "rarely" appropriate in a case like this.  *Alviar*, 573 F.3d at 539; *Myers*, 892 F.2d at 647; *Brooks*, 2021 WL 2413160, at *2. Furthermore, the defendants are also charged jointly with multiple subsidiary crimes that are part and parcel of the racketeering conspiracy, which further emphasizes the strong interest in trying these defendants together.

---

[1]  McClain refers to Justice Stevens' opinion concurring in the judgment in *Zafiro*, R. 139 at 3; however, eight members joined the Court's majority opinion, and no one joined Justice Steven's opinion concurring in the judgment.  It is not the law.

Several other reasons strongly favor a joint trial. The trial is expected to last approximately nine weeks, and the government expects to call over fifty witnesses. Severing this trial will require two lengthy trials to establish the very same facts twice over. As the Seventh Circuit noted, joint trials reduce the resources spent by the Court, the government, as well as the many witnesses who will be forced to testify twice if there are two trials on the same charges.

In addition, a joint trial will prevent a predictable strategy from unfolding in this case: Blaming the absent defendant for the crimes alleged in the indictment. As the Seventh Circuit has noted, a joint trial best ensures that a defendant does not seek to evade an accurate jury finding by allowing the jury to have the best perspective on what really happened, thus leading to more accurate and consistent outcomes. *Zafiro*, 506 U.S. at 537; *Buljiubasic*, 808 F.2d at 1263.

McClain's arguments in favor of severance are meritless. As an initial matter, McClain relies upon a decision of the Ninth Circuit, *United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991), to suggest that the prospect of antagonistic defenses entitles him to a separate trial. But *Tootick* has never been endorsed in this Circuit— indeed, the Supreme Court's seminal decision in this area, *Zafiro*, holds that mutually antagonistic defenses are *not* presumptively prejudicial. R. 139 at 3. Moreover, as discussed above, the Seventh Circuit has explained that there is a positive benefit in holding a joint trial because it does not permit a defendant to game the system by blaming an absent defendant: "Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact." *Buljiubasic*, 808 F.2d at 1263. McClain contends that Madigan wishes to shift the blame

to McClain for at least some of the criminal conduct in this case, and that he may opt to do the same. R. 139 at 3-5, 9. This makes it obvious that Madigan, even though he has not joined the motion, wants severance just as badly as McClain, for it will allow him (and McClain at his own trial, if there were one) to do precisely what the Seventh Circuit has cautioned joinder is meant to avoid: blame the absent defendant. This Court should not countenance the defendants' efforts to shift blame to a missing person.

As noted above, *Zafiro* makes it clear that severance based on antagonistic defenses is only properly considered when it would compromise a specific trial right of a defendant or prevent the jury from making a reliable judgment of guilt or innocence. 506 U.S. at 539. But McClain has failed to demonstrate severance is necessary to accomplish either of these goals. To start with, McClain does not seriously contend that separate trials of each defendant would be more reliable in their outcomes; on the contrary, it appears from the redacted filing that McClain effectively contends that Madigan plans to put on a phony defense blaming him, and he wants Madigan to put that fake defense on at his own separate trial, where defendant McClain will be absent. That does not sound like a formula designed to increase reliability of outcomes; rather, it seems to suggest the precise type of situation where a joint trial is proper—so that there is a full airing of claims, and defendant Madigan is not able to take liberties by unfairly pointing the finger at an absent co-defendant. *Buljiubasic*, 808 F.2d at 1263.

McClain also contends that Madigan will be able to accuse him of wrongdoing without being bound by the same rules as the government, such as the rules governing discovery, notice of Rule 404(b) evidence and Rule 608(b) evidence, and the arguments Madigan will make about McClain. R. 139 at 5-6. On the contrary, this Court will be in a

position to regulate the introduction of evidence at trial consistent with the Federal Rules of Evidence.[2] To the extent McClain complains that Madigan will argue McClain is culpable, that is true in *every* case where antagonistic defenses are at play amongst individuals engaged in joint criminal activity, so it does nothing to remove this case from the general heartland of cases where finger-pointing at co-defendants is permissible at a joint trial. In other words, this is nothing more than a "paradigmatic case of blame-shifting codefendants," which does not merit severance. *United States v. Plato*, 629 F.3d 646, 651 (7th Cir. 2010). Indeed, the Seventh Circuit has consistently rejected the claim that antagonistic defenses merit severance, not only in *Plato*, but in a series of other cases. *See United States v. Jackson*, 787 F.3d 1153, 1159 (7th Cir. 2015) (severance not required "simply because two codefendants present 'mutually antagonistic defenses'") (quoting *Zafiro*, 506 U.S. at 538); *United States v. Hughes*, 310 F.3d 557, 564 (7th Cir. 2002) ("Mere 'finger-pointing' at another defendant, such as occurred here, is not sufficient to require severance."); *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001) ("Even a showing that two defendants have 'mutually antagonistic defenses,' that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right."); *United States v. Goines*, 988 F.2d 750, 781 (7th Cir. 1993) (blame-shifting is not grounds for severance). Rather, appropriate

---

[2]     Moreover, this Court, as other courts have, can require that the parties seek a ruling from the Court before the use of Rule 608(b) evidence on cross-examination or in opening arguments to alleviate the risk of surprise or the unfair introduction of otherwise inadmissible evidence. Indeed, the government anticipates making such a request in its pretrial motions.

limiting instructions generally are sufficient to cure any risk of prejudice. *Plato*, 629 F.3d at 651 (citing *Zafiro*, 506 U.S. at 539).

In a similar vein, McClain also claims that he will have to respond to any attacks made by Madigan; his redacted filing hints he might decide to testify if attacked by defendant Madigan, and that his own attorneys will be "forced to act as a prosecutor against Mr. Madigan." R. 139 at 7-9. Again, rebutting an antagonistic defense is not by itself sufficient to merit severance; that's expected in this context, and allowing either defendant to blame an absent defendant does not enhance the reliability of the criminal justice system.

McClain also half-heartedly suggests Madigan might offer evidence that could not otherwise be offered by the government at trial, but does not detail what that evidence might be in his redacted filing, and does not explain why it would be inadmissible against McClain in a separate trial. R. 139 at 6. In any case, carefully tailored instructions will properly restrict the jury's consideration of such evidence, and any arguments made by counsel will also be subject to the court's supervision and the instructions the jury will receive. *Zafiro*, 506 U.S. at 539. As noted above, that point has been recently driven home by the Supreme Court; effective jury instructions suffice in all but the rarest cases. *Cf. Samia*, 599 U.S. at 646-47 (noting effectiveness of limiting instructions as applied to a confession in a murder case).[3]

---

[3] In this regard, McClain claims that somehow the jury will "be confused as to the burden of proof required for a conviction." R. 139 at 7. But *Samia* makes it clear that the Court is to presume the jurors will understand its instructions and that the jury can follow them; it is certain that the Court can plainly instruct the jury about the burden in this case and where it lies. *Accord Brooks*, 2021 WL 2413160, at *7 (noting that less drastic measures such as limiting instructions often suffice than resorting to severance; "This Court presumes that juries follow instructions.") (citation omitted).

Finally, McClain's claims that Madigan's attorneys will take on the role of a second set of prosecutors, R. 139 at 3, or that his own attorneys will prosecute Madigan, R. 139 at 9, are overwrought. Both defendants have made it clear that they are on the same page as it concerns much of the defense theory of the case. Both have stated in their recently filed pretrial motions that they believe the conduct here was not criminal in nature at all. *See* R. 131 at 1 (noting Madigan did not transgress any local, State, or federal law), 135 (defendant McClain joining defendant Madigan's motions). Both contend that making favorable job recommendations is not nefarious and criminal, and that is all that occurred here. *Id.* These joint claims were made in filings well after June 2024, when the alleged schism between the defendants arose. R. 139 at 3.

Based upon arguments by both defendants in their motions to dismiss, the defense strategies at trial are not going to be flatly inconsistent with each other; both defendants will occupy considerable common ground in defending against the charges. Madigan has not admitted a single thing that occurred here was a crime, on the contrary, he has affirmatively denied it. Neither defense team can be accurately characterized as "prosecutors" under these circumstances. To be sure, Madigan perhaps contemplates, as an alternative additional argument, throwing McClain under the bus by asking the jury to blame McClain in case they find something illegal happened (which he flatly denies); that does not make him some sort of "second prosecutor" by any stretch. Indeed, even McClain notes in his redacted filing that Madigan may pursue an "independent alternate theory," R. 139 at 6, which highlights that the defendants will not pursue solely exclusive

or irreconcilable theories. This is not the rare case meriting severance of co-conspirators.[4] The motion should be denied.

## CONCLUSION

For foregoing reasons, the government respectfully requests that the Court deny McClain's motion to sever.

Respectfully submitted.

MORRIS PASQUAL
Acting United States Attorney

/s/ *Amarjeet S. Bhachu*
AMARJEET S. BHACHU
DIANE MacARTHUR
SARAH E. STREICKER
JULIA K. SCHWARTZ
Assistant United States Attorneys
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

---

[4]     Moreover, the fact that McClain—Madigan's decades-long close confidante—has detailed information about the defense Madigan plans to put on which has not been shared with the government and is redacted in his public filing suggests that the two defendants are in fact sharing information and are strategically seeking to sever their trials.